UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 4:05CR021 CEJ |
|  | ) |  |
| ANTONIO DAVIS, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). A hearing was held on the motion to suppress on March 31, 2005.

**Doc #19 Motion of Defendant to Suppress Evidence and Statements**

Based upon the evidence adduced at the hearing on the motion to suppress, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

Kevin Moran is a police officer with the St. Louis Metropolitan Police Department. On September 25, 2004, he was assigned to the Ninth District Uniform Patrol Division. On that date, he received a radio call to respond to a burglary that had just occurred at an abandoned residence in the 3500 block of Evans Street in the City of St. Louis. The description of the burglars were two black males, one wearing a dark baseball cap. The broadcast said they were last seen walking north pushing a shopping cart containing items evidently from the burglary. When Moran arrived at the address of the burglary, he was met by a second officer, Officer Carter, and they determined that the back door of the building had been forced open. When the two officers went inside the house, they

found no one inside the house. They looked quickly around the house and determined that kitchen cabinets, a mantle piece, and tables were missing from the house apparently having been stripped out of the house.

The officers then drove around the neighborhood in an attempt to find the burglars. While doing this, they saw a shopping cart on the sidewalk in front of 1535 Bacon, about a block and a half from the burglary scene. In the shopping cart, they observed a mantle piece and kitchen cabinets which were very similar to the ones that had been removed from the burglarized house. They also observed tables in the front yard of the residence which were identical to tables that were still in the house. They also saw two individuals standing by the tables on the front steps of the house. They observed that both the individuals were black males, and one was wearing a dark colored baseball cap.

Moran got out of his vehicle to approach the two to ask them some questions about the burglary. As Moran reached the yard, he said to the individuals that he would like to talk to them. Neither person responded but instead ran quickly away from the officers and into the house.

Moran and Officer Carter chased the two individuals into the house. Moran followed the person with the dark-colored baseball cap into the front room of the house. Moran observed this person (who was later identified as the defendant) picking up a shotgun lying on a shelf-type headboard, and observed the defendant drop the gun behind the headboard. At this point, Moran pulled his gun, pointed it at the defendant and ordered the defendant to the ground. The defendant complied with Moran's command and Carter came into the room, and at Moran's direction, retrieved the shotgun. As the officers were retrieving the shotgun from behind the headboard, they observed in plain view, sitting on the shelf in the headboard, empty capsules and used syringes.

2

At this point, the defendant was placed under arrest for the weapons violation and for the burglary, and the defendant was advised of his complete Miranda rights by Moran reading them to him from a police department Miranda card. Moran asked the defendant if he understood his rights, and the defendant stated he understood them. When they questioned the defendant about the house, the defendant said he was inside the house babysitting another person's children. He said nothing about the shotgun and denied that the syringes belonged to him. Evidently, no threats or promises were made to the defendant to obtain this statement from him. The other individual, who had fled into the house, evidently made good his escape while Carter and Moran were securing the defendant after having seen the shotgun.

**Conclusions of Law**

A. The Arrest of the Defendant and the Seizure of the Weapon and Drug Paraphernalia from the House

Based on the above facts, the undersigned concludes that the arrest of the defendant in the front room of the house, the seizure of the shotgun, and the seizure of the empty capsules and used syringes are lawful.

Police officers may arrest persons without a warrant if they have probable cause to believe that a crime has been committed and the person arrested has committed a crime. Gerstein v. Pugh, 420 U.S. 103 (1975); Beck v. Ohio, 379 U.S. 89 (1964). Probable cause is a "fluid concept turning on the assessment of probabilities in a particular factual context–not readily or even usefully reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). In the context of a warrantless arrest, all that need be shown is a "fair probability" that a crime has been committed and that the defendant committed the crime. See Illinois v. Gates, supra. Further, flight, when combined

3

with other factors such as those present here, is a circumstance from which probable cause might be inferred. See United States v. Jacquillon, 469 F.2d 380 (5th Cir. 1972).

Based on the above, the undersigned concludes that the officers had strong probable cause to arrest the defendant. First, the undersigned concludes that there was probable cause to believe that the defendant and another person had just committed a burglary and conveyed the goods from that burglary to the area of the house on Bacon Avenue. In addition, once the officers chased the defendant into the house, they personally observed him carrying a weapon and then concealing it. Thus, the undersigned concludes that Moran had probable cause to believe that the defendant had committed the crimes of burglary second degree and unlawful use of a weapon.

Regarding the probable cause to arrest the defendant for burglary, at the time the officers approached the house, they were aware that a burglary had just been committed two blocks from where the defendant and another male were seen standing; they were aware that kitchen cabinets, a mantel piece, and tables had been removed from the house and transported from the scene in a shopping cart; they were aware that the individuals who committed the burglary were two black males, one of whom was wearing a dark-colored baseball cap; they observed the defendant, who is a black male, and another black male standing on the porch of a house on Bacon, with the defendant wearing a dark-colored baseball cap; in front of the house was a shopping cart which contained kitchen cabinets which matched the cabinets taken from the apartment, a mantel piece, and tables which were in the yard by where the defendant was standing, which tables perfectly matched tables which were still in the house. In addition to all this, the defendant ran when approached by Moran, who was attempting to question him about the burglary. Based on the above, the undersigned concludes that there was, at the very least, a "fair probability" that a burglary had been recently

4

committed, and that the defendant and the other individual had committed it.  As to the gun violation Moran personally observed the defendant to be in possession of and concealing the firearm.  Therefore, the undersigned concludes that the arrest of the defendant both for burglary and for unlawful use of a weapon was based on probable cause, and, therefore, lawful.

Further, if officers have probable cause to believe that a defendant has committed a crime, they may pursue that person from a public place into a private dwelling to arrest him as well as conduct a search for weapons, without violating the defendant's Fourth Amendment rights.  See Warden v. Hayden, 387 U.S. 294 (1967).  In United States v. Santana, 427 U.S. 38 (1976) (a case similar to the case now at bar), the police observed their informant making a "controlled buy" of heroin from Santana.  As they observed Santana standing on her porch at her doorway, they pulled their vehicle to the front of her house and announced that they were police officers.  As the officers approached her, she fled into the house with the officers in pursuit, arresting Santana in her home.  During the arrest, the officers recovered several packets of heroin from the floor of the house and the marked "buy money" from Santana.  In holding the arrest and seizure to be legal, the court stated as follows:

> The only remaining question is whether the act of retreating into her house could thwart an otherwise proper arrest.  We hold that it could not.  In Warden v. Hayden, we recognized the right of police, who had probable cause to believe that an armed robber had entered the house a few minutes before, to make a warrantless entry to arrest the robber and to search for weapons.  This case, involving a true 'hot pursuit,' is clearly governed by Warden; the need to act quickly here is even greater than in that case while the intrusion is much less.  The District Court was correct in concluding that 'hot pursuit' means some sort of chase, but it need not be an extended hue and cry 'in and about the public streets.'  The fact that the pursuit here ended almost as soon as it began did not render it any the less a 'hot pursuit' sufficient to justify the warrantless entry into Santana's house…We thus conclude that a suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper under Watson by the expedient of escaping into a private house.

5

427 U.S. 38, 42, 43.

In United States v. Sewell, 942 F.2d 1209 (7th Cir. 1991), undercover officers made a purchase of narcotics in the doorway of the defendant's house, and when the officer immediately tried to arrest the defendant, he retreated into the house. The officers pursued him and arrested the defendant in one room of the house and another co-defendant in another room. The police also seized narcotics and a gun from the floor of the rooms in which the defendant and co-defendant were arrested. In upholding the arrest and seizure, the court stated as follows:

> Sewell maintains that the officers' warrantless entry into his home to effect his arrest violated the fourth amendment stricture against unreasonable searches and seizures. Specifically, Sewell contends that no exigent circumstances existed to justify the officers' entry, and that all evidence seized incident to the arrest should have been suppressed by the district court. We disagree. As the district court properly determined, the arresting officer, having observed a crime being committed by Sewell in the doorway of his apartment, had probable cause to arrest Sewell at that time. Sewell should not be permitted to thwart that arrest by closing the door and retreating to the sanctity of his home.

942 F.2d 1209, 1211.

The undersigned concludes that exactly the same situation exists in the case now at bar as was present in Santana and Sewell. In the present case, police had very strong probable cause to arrest the defendant for burglary when they saw him and the other individual standing on the front porch matching the description of the burglars shortly after the burglary and with the items taken from the burglary apparently in their possession and on their property. Thus, the undersigned concludes, as stated above, that there was ample probable cause to arrest the defendant for burglary while he was standing on the porch, and certainly after he fled. When the officers pursued the defendant into his house in "hot pursuit," exigent circumstances existed which justified the officers entering the house

6

to make the arrest. A burglary had just been committed, the defendants were in possession of the items from the burglary, more items might have been stored in the house, and the defendants were about to make their escape from officers. Further, as in Santana, the intrusion was relatively minor, and the exigent circumstances were at least more potentially dangerous than in Santana or Sewell, because burglary second degree is a serious felony and is classified as a violent offense by the federal statutes. Thus, the undersigned concludes that because the officers had probable cause to arrest the defendant in a public place, they were justified in chasing the defendant into his home and arresting him in the front room of his house.

The undersigned further concludes that the seizure of the shotgun and other items was justified as either a search incident to a lawful arrest or a seizure of evidence and contraband that was in plain view. See Chimel v. California, 395 U.S. 752 (1979); Coolidge v. New Hampshire, 403 U.S. 443 (1971). In defining the scope of a search incident to a lawful arrest, the Eighth Circuit stated as follows:

> Moreover, accessibility, as a practical matter, is not the benchmark. The question is whether the cocaine was in the area within the immediate control of the arrestee within the meaning of Chimel v. California. This rule defines the area generally which may be searched and is not constrained because the arrestee is unlikely at the time of the arrest to actually reach into that area.

United States v. Palumbo, 735 F.2d 1095, 1097 (8th Cir. 1984). Further, several circuits have upheld a search of a room where the arrest occurred even after the arrestee had been removed from the room or otherwise immobilized. See Davis v. Robbs, 794 F.2d 1129 (6th Cir. 1986); United States v. Tarazon, 989 F.2d 1051 (9th Cir. 1993); United States v. Queen, 847 F.2d 346 (7th Cir. 1988).

The undersigned concludes that the same situation exists in the case at bar as existed in the above cases cited. The officers were confronted with a very dangerous situation. The defendant fled into the house after having committed the crime of burglary second degree. Further, they observed the defendant pick up a firearm and place it behind a headboard, and arrested him almost immediately in the same room. The drugs, which were on a shelf of the headboard where the gun had been, and the gun, which was behind the headboard, were in close proximity to the defendant and were in plain view. Thus, the undersigned concludes that the seizure of the weapon and the drug paraphernalia is lawful incident to a lawful arrest.

Alternatively, the seized items were clearly in plain view of the officers while they were lawfully in the defendant's front room to arrest him. See Coolidge v. New Hampshire, supra. The shotgun is evidence of the crime of unlawful use of a weapon. The empty capsules and the syringe were evidence of possession of narcotics paraphernalia. Therefore, the undersigned concludes that the seizure of the firearm and the narcotics paraphernalia was lawful and these items should not be suppressed

B. Statement of the Defendant

Based on the above, the undersigned concludes that the statement made by the defendant was voluntarily made after the defendant was fully advised of his rights and waived his rights by talking to police officers.

Regarding confessions made after an arrest, the Eighth Circuit Court of Appeals has stated as follows:

> The appropriate test for determining the voluntariness of a confession is whether in light of the totality of the circumstances, pressures exerted on the suspect have overborne his will.

See United States v. Meirovitz, 918 F.2d 1376, 1379 (1990).

In deciding whether or not the defendant's will has been overborne, courts consider both the conduct of the officer and the capacity of the defendant to resist pressure or misrepresentation. Evans v. Dowd, 932 F.2d 739 (8th Cir. 1991). As to the defendant's statement, the evidence shows it was made immediately after his arrest after the defendant was fully advised of his rights and said he understood his rights. Although the defendant was in handcuffs, according to the evidence in this case, he was not threatened in any way nor promised anything in return for his statement. Further, he was not questioned at length by the officers except to ask him about the guns and the drugs. The only statement that the defendant made other than to deny the possession of the drugs was that he was at the house to babysit other individuals.

Thus, based on the above, the undersigned concludes that the defendant's statements were voluntarily made after the defendant was fully advised of his rights and knowingly waived those rights. Miranda v. Arizona, 384 U.S. 436, 467-75 (1966); North Carolina v. Butler, 441 U.S. 369, 374-75 (1979); Colorado v. Connelly, 479 U.S. 157 (1986); Moran v. Burbine, 475 U.S. 412 (1986); United States v. House, 939 F.2d 659 (8th Cir. 1982) (defendant's waiver may be inferred from the fact that the defendant responded to questions after being advised of and understanding his rights). Therefore, the defendant's statement should not be suppressed.

## Conclusion

Therefore, the defendant's motion to suppress evidence and statements should be denied.

* * *

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that (Doc. #19) Motion of Defendant to Suppress Evidence and Statements be **denied**.

Further, the parties are advised that they have eleven (11) days in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Further,

An order setting the trial of this matter is forthcoming from the Honorable Carol E. Jackson, United States District Judge.

                                              /s/ Terry I. Adelman
                                      UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of April, 2005.